1 | ZIEVE, BRODNAX & STEELE, LLP
Erin M. McCartney, Bar No. 308803
2 | Mark S. Krause, Bar No. 302732
30 Corporate Park, Suite 450
3 | Irvine, CA 92606
Telephone: (714) 848-7920
4 | Fax: (714) 908-2615

5 | Attorneys for Secured Creditor, Bank of America, N.A.

6

7

8

9

10

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

In re:

RODNEY M. VAN PELT,

        Debtor,

CASE NO.:  2:18-bk-10047-WB

Chapter 13

**OPPOSITION TO DEBTOR'S
MOTION FOR ORDER IMPOSING
A STAY OR CONTINUING THE
AUTOMATIC STAY**

Hearing:
Date:  January 16, 2018
Time: 10:00 a.m.
Place: United States Bankruptcy Court
     255 East Temple Street
     Los Angeles, CA 90012
     **Courtroom 1375**

     Bank of America, N.A. ("Secured Creditor") respectfully submits the following opposition to the above entitled debtor, Rodney M. Van Pelt's ("Debtor") Motion for Order Imposing a Stay or Continuing the Automatic Stay ("Motion"). This Opposition is supported by the points and authorities cited herein, and the record currently before the Court.

1

# I.    STATEMENT OF FACTS

1.    Debtor filed the instant Bankruptcy action as a Chapter 13 Petition on January 3, 2018.

2.    This Secured Creditor holds the First Trust Deed on Debtor's property generally described as **3126 Silva Street, Lakewood, CA 90712** (the "Subject Real Property").  A true and correct copy of the Deed of Trust is attached as **Exhibit "1"**.

3.    According to Secured Creditor's records, the Debtor has not made a payment on the loan since November 23, 2015.  As of January 10, 2018, the Debtor is in default in the approximate amount of $61,681.43.

4.    Due to a default on the loan, the Secured Creditor recorded a Notice of Default on February 9, 2017. A true and correct copy of the Notice of Default is attached as **Exhibit "2"**.

5.    A Notice of Sale was recorded on May 26, 2017 and a sale was scheduled for June 22, 2017. A true and correct copy of the Notice of Sale is attached as **Exhibit "3"**.

6.    The Secured Creditor postponed the foreclosure sale to review loss mitigation options with the Debtor. The sale was first postponed to July 24, 2017 and subsequently postponed to September 25, 2017.

7.    Before the postponed foreclosure sale scheduled for September 18, 2017, Counsel for the Debtor transmitted a drafted complaint alleging violations of the California Homeowner's Bill of Rights. A true and correct copy of the Notice and Complaint is attached as **Exhibit "4"**.

8.    On the day of the scheduled foreclosure sale, the Debtor filed the first bankruptcy proceeding within the past one year.  On September 25, 2017, the Debtor filed a Chapter 13 case under case number 2:17-bk-21718.  The case was dismissed for Debtor's failure to file information on October 19, 2017.  A true and correct copy of the case docket is attached as **Exhibit "5".**  Due to this bankruptcy proceeding, the Secured Creditor postponed the foreclosure sale.

9.    The second bankruptcy, case number 2:17-bk-24442-VZ, was filed as a Chapter 13 by Debtor on November 22, 2017, five (5) days before the scheduled foreclosure sale was set

on November 27, 2017.  The case was dismissed for Debtor's failure to file information on or about December 11, 2017.  A true and correct copy of the case docket is attached hereto as **Exhibit "6".**

10.    This is the <u>third</u> bankruptcy case filed by the Debtor pending within the past year. This third case was yet again filed to stop the Secured Creditor's right to foreclose on the subject property.

11.    Since this is the Debtor's third bankruptcy petition within one year, pursuant to 11 U.S.C. §362(c)(4), Debtor is not entitled to a stay upon the filing of the instant Bankruptcy. Furthermore, pursuant to 11 U.S.C. §362(c)(4)(D), the instant Bankruptcy case is presumptively filed not in good faith.

12.    However, despite this fact, the Debtor has filed the instant Motion, seeking the re-imposition of the automatic stay.

13.    For the reasons discussed herein, Secured Creditor respectfully request that the Court deny Debtor's Motion.

## II.    <u>ARGUMENT</u>

The Automatic Stay is not in effect by operation of law upon the commencement of this case on January 3, 2018.  Pursuant to 11 U.S.C. §362(c)(4)(A)(i), in a case filed by an individual who had two (2) or more Bankruptcy cases pending within the previous year but were dismissed, other than a case refiled under a chapter other than a Chapter 7 after dismissal under section 707(b), the stay under subsection (a) shall not go into effect upon the filing of the later case. Furthermore, in order to rebut the presumption of bad faith in the instant bankruptcy filing, Debtor must present "clear and convincing evidence, to the contrary. 11 U.S.C. §362(c)(3). In addition, Secured Creditor believes that the multiple bankruptcies are being filed in bad faith and for the sole purpose of thwarting Secured Creditor's foreclosure proceedings.  Secured Creditor has postpone the foreclosure sale due to the bankruptcy filings.

The instant Motion fails to present "clear and convincing evidence" to rebut the presumption of bad faith. The Debtor voluntarily filed two pro se Chapter 13 cases. The Debtor

was fully aware of the requirements once the case was filed but failed to comply and timely file his Schedules or Chapter 13 plan. The Debtor now states that the stay should be imposed in this third proceeding since he has an attorney representing him and he has the financial ability to afford reorganization. However, unfortunately for the Debtor, the Motion lacks specificity and merely recites conclusions unsupported by evidence. There is neither a true showing of changed circumstances nor a likelihood of success.

The Debtor claims that he was unable to obtain representation in the prior cases, over a span of four (4) months, due to his physical disabilities. He also states that he is currently incarcerated. It is not clear if the Debtor was also incarcerated during the pendency of the prior bankruptcy proceedings but the Debtor's current counsel was working on his behalf during that time period and served a drafted complaint on counsel for the Secured Creditor to stop a previously scheduled foreclosure sale. Now, the Debtor appears to be arguing that his failure to comply and file the required documents in the prior two cases was due to the fact that he was not represented. However, the Debtor was clearly aware of the requirements in the prior cases and was working with his attorney during that time.

The Debtor failed to provide sufficient evidence of a change in his financial situation. The Motion alleges that the instant Bankruptcy was filed in order to repay all of the unsecured debts, as well as, make payments to the Secured Creditor. The Debtor filed schedules but failed to file a Chapter 13 plan. Based on the Schedules, the Debtor does not appear capable of demonstrating to the Court that he has an ability to fund a feasible plan. In order to obtain confirmation a Chapter 13, Debtor must demonstrate to the court that the plan as proposed is feasible, meaning the Debtor has not only the present ability but the future ability to comply with the proposed plan. *In re Hockaday,* 3 B.R. 254, 255 (Bankr. S.D. Cal. 1980). In order to be satisfied this important element is met, a thorough review of the Debtor's financial picture is required. *Id.*

In the instant case, the Debtor failed to propose a Chapter 13 plan or provide any evidence to support the listed income. As of January 10, 2018, the amount in default was

approximately $61,681.43.  The last payment received on the loan dates back to November 2015.

Since that time, the Secured Creditor has been forced to advance funds for payment of property

taxes and insurance for the Subject Real Property.

The Debtor's Schedules reflect his income as Social Security and proceeds from an

Annuity in the total amount of $1,588.80. In addition to the Debtor's income, the Debtor's

spouse reports self-employment income in the amount of $3,948.00. Debtor's Schedule "I"

indicates that the average monthly income is $5,536.80.  Schedule "J" indicates that Debtor's

average monthly expenses are $3,354.00 with very minimal expenses listed. True and correct

copies of the Debtor's Schedules "I" and "J" are attached as **Exhibit "7" and "8"**.  The Debtor's

Schedule "J" reflects a very stringent budget for anything beyond scheduled expenses and

therefore places the Debtor at a high risk of default.

Under these facts it is highly unlikely that Debtor will be able to propose an effective

reorganization within a reasonable amount of time, especially when there is no evidence of any

substantial change or improvement in the Debtor's financial condition.  The Debtor is relying on

his non-filing spouse's self-employment income to fund the ongoing mortgage payments and the

Chapter 13 plan payments. Debtor has failed to show through clear and convincing evidence that

the presumption of bad faith has been overcome.  Debtor's Declaration lacks specificity and is

merely a recitation of conclusions unsupported by the evidence. There is neither a true showing

of changed circumstances nor a greater likelihood of success in this case than in the prior cases.

Based on the foregoing, Secured Creditor asks that the instant Motion be denied entirely

or denied as to Secured Creditor's collateral only.  However, if the Court is nevertheless inclined

to grant the instant Motion, Secured Creditor requests that any order imposing the stay provide

for adequate protection of Secured Creditor's interest in its collateral by requiring maintenance

of real estate taxes and insurance and regular monthly note payments to the Secured Creditor.

///

///

///

WHEREFORE, Secured Creditor prays as follows:

1.      That the Debtor's Motion be denied.

2.      For such other relief as this Court deems proper.

Dated: January 12, 2018           ZIEVE, BRODNAX & STEELE, LLP

By: /s/ Erin M. McCartney
Erin M. McCartney, Esq.
Mark S. Krause, Esq.
Attorneys for Secured Creditor,
Bank of America, N.A.

**This page is part of your document - DO NOT DISCARD**



**20072739514**  Pages: 018

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**12/13/07 AT 08:13AM**

| | |
|---|---|
| Fee: | 61.00 |
| Tax: | 0.00 |
| Other: | 0.00 |
| Total: | 61.00 |

1451057    200712130150035    Mail

## TITLE(S) :



L E A D    S H E E T

**Assessor's Identification Number (AIN)**
To be completed by Examiner OR Title Company in black ink.        **Number of AIN's Shown**

**THIS FORM IS NOT TO BE DUPLICATED**

EXHIBIT "1"

Recording Requested by &
When Recorded Return To:
US Recordings, Inc.
2925 Country Drive Ste 201
St. Paul, MN 55117

12/13/07

20072739514

———————— [Space Above This Line For Recording Data] ————————

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated    NOVEMBER 08, 2007    , together with all Riders to this document.
(B) "Borrower" is RODNEY M. VAN PELT, AN UNMARRIED PERSON

Borrower's address is    3126 SILVA ST, LAKEWOOD, CA 90712

. Borrower is the trustor under this Security Instrument.
(C) "Lender" is BANK OF AMERICA, N.A.

Lender is a NATIONAL BANKING ASSOCIATION
organized and existing under the laws of THE UNITED STATES OF AMERICA

**CALIFORNIA** – Single Family

Page 1 of 15

**BS6(CA)** (0207)            VMP Mortgage Solutions (800)521-7291
        CVCA 11/07/07 2:17 PM

EXHIBIT "1"

Lender's address is 275 SOUTH VALENCIA AVENUE, BREA, CA 928236340

Lender is the beneficiary under this Security Instrument.
**(D) "Trustee"** is  PRLAP, INC.

**(E) "Note"** means the promissory note signed by Borrower and dated  NOVEMBER 08, 2007 .
The Note states that Borrower owes Lender FOUR HUNDRED THOUSAND AND 00/100
                                                                        Dollars
(U.S. $      400,000.00    ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than  DECEMBER 01, 2037
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights
in the Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late
charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The
following Riders are to be executed by Borrower (check box as applicable):

☐ Adjustable Rate Rider    ☐ Condominium Rider           ☐ Second Home Rider
☐ Balloon Rider            ☐ Planned Unit Development Rider    ☐ **Other(s) [specify]**
☐ 1-4 Family Rider         ☐ Biweekly Payment Rider

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law) as well as
all applicable final, non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees,
assessments and other charges that are imposed on Borrower or the Property by a condominium
association, homeowners association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction
originated by check, draft, or similar paper instrument, which is initiated through an electronic
terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize
a financial institution to debit or credit an account. Such term includes, but is not limited to,
point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire
transfers, and automated clearinghouse transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages
described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or
other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv)
misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or
default on, the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and
interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.)
and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended
from time to time, or any additional or successor legislation or regulation that governs the same
subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and

**BS6(CA)**  (0207)
   CVCA 11/07/07 2:17 PM              Page 2 of 15

EXHIBIT 1

restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY                          of LOS ANGELES                          :

      [Type of Recording Jurisdiction]                     [Name of Recording Jurisdiction]
"SEE ATTACHED EXHIBIT A."

Parcel ID Number: 7156-012-035                    which currently has the address of
3126 SILVA STREET                                                        [Street]
LAKEWOOD                              [City] , California 90712    [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

    **1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the

BS6(CA)  (0207)                         Page 3 of 15
    CVCA 11/07/07 2:17 PM

EXHIBIT "1"

Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the

**BS6(CA)**  (0207)
CVCA 11/07/07 2:17 PM

Page 4 of 15

Description: Los Angeles,CA Document - Year.DocID 2007 2739514 Page: 5 of 18
Order: j Comment:

EXHIBIT 1

term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

BS6(CA)  (0207)

CVCA 11/07/07 2:17 PM

Page 5 of 15

EXHIBIT "1"

7

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

BS6(CA)  (0207)
CVCA 11/07/07 2:17 PM

Page 6 of 15

EXHIBIT "1"

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**BS6(CA)** (0207)
CVCA 11/07/07 2:17 PM

Page 7 of 15

EXHIBIT "1"

9

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

BS6(CA)    (0207)
CVCA 11/07/07 2:17 PM

Page 8 of 15

EXHIBIT "1"

*10*

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or

**BS6(CA)** (0207)
CVCA 11/07/07 2:17 PM

**Page 9 of 15**

EXHIBIT "1"

loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to

**BS6(CA)** (0207)

CVCA 11/07/07 2:17 PM

Page 10 of 15

EXHIBIT "1"

*17*

make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred

**BS6(CA)**  (0207)
CVCA 11/07/07 2:17 PM

EXHIBIT "1"

*13*

in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual

**BS6(CA)**  (0207)
CVCA 11/07/07 2:17 PM

**Page 12 of 15**

EXHIBIT "1"

knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee.

**BS6(CA)**  (0207)
    CVCA 11/07/07 2:17 PM

Page 13 of 15

EXHIBIT "1"

15

Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

   **25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

   BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                          RODNEY M. VAN PELT          -Borrower

_____          _____ (Seal)
                                                                      -Borrower

                       _____ (Seal)      _____ (Seal)
                                    -Borrower                           -Borrower

                       _____ (Seal)      _____ (Seal)
                                    -Borrower                           -Borrower

                       _____ (Seal)      _____ (Seal)
                                    -Borrower                           -Borrower

BS6(CA)  (0207)                          Page 14 of 15
    CVCA 11/07/07 2:17 PM

EXHIBIT "1"

*16*

State of California
County of   *WS Angeles*                              } ss.

On   *11|08|07*                    before me,  *ANGELA LU, NOTARY PUBLIC*
                                                        personally appeared
       *RODNEY M. VANPELT*

personally known to me (or proved to me on the basis of satisfactory evidence) to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s)
acted, executed the instrument.
WITNESS my hand and official seal.

_____   (Seal)



Description: Los Angeles,CA Document - Year.DocID 2007.2739514 Page: 16 of 18
Order: j Comment:

EXHIBIT "1"

14

# EXHIBIT "A"

LOT 35 OF TRACT 17226, IN THE CITY OF LAKEWOOD, COUNTY OF LOS
ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 421
PAGES 10 THROUGH 15 INCLUSIVE OF MAPS, IN THE OFFICE OF THE
COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, GAS AND OTHER HYDROCARBON
SUBSTANCES IN OR UNDER SAID LAND THAT MAY BE PRODUCED FROM
A DEPTH OF 500 FEET BELOW THE SURFACE OF SAID LAND, WITHOUT
RIGHT OF ENTRY UPON THE SURFACE OF SAID LAND FOR THE
PURPOSE OF MINING, DRILLING, EXPLORING OR EXTRACTING SUCH
OIL, GAS AND OTHER HYDROCARBON SUBSTANCES OR OTHER USE OR
RIGHTS IN OR TO ANY PORTION OF THE SURFACE OF SAID LAND TO A
DEPTH OF 500 FEET BELOW THE SURFACE THEREOF, BUT WITH THE
RIGHT TO DRILL INTO, LOCATE WELLS AND PRODUCE OIL, GAS AND
OTHER HYDROCARBON SUBSTANCES FROM ANY PORTION OF SAID
LAND WHICH LIES BELOW 500 FEET FROM THE SURFACE THEREOF, AS
RESERVED IN THE DEED FROM MONTANA LAND COMPANY, RECORDED
IN BOOK 32094 PAGE 1, OFFICIAL RECORDS.

Being that parcel of land conveyed to RODNEY M. VAN PELT, A SINGLE MAN
from MICHAEL J. BERG, SUCCESSOR TRUSTEE OF THE EUGENE LAMB
LIVING TRUST DATED MAY 13, 2004 by that deed dated 11/05/2004 and
recorded 11/24/2004 in Instrument Number 043052572 of the LOS ANGELES
County, CA Public Registry.

Tax ID:        7156-012-035

U42639619-01HM17
DEED OF TRUST
LOAN# 6356959202
US Recordings

EXHIBIT "1"



**This page is part of your document - DO NOT DISCARD**





# 20170164540

**Pages:
0005**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**02/09/17 AT 08:00AM**

| | |
|---|---|
| FEES: | 34.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 34.00 |



**LEADSHEET**



201702090230013

**00013344251**



008135568

**SEQ:
01**

SECURE - 8:00AM



*E534011*

**THIS FORM IS NOT TO BE DUPLICATED**



02-16036398

# EXHIBIT "2"

· RECORDING REQUESTED BY:
Law Offices Of Les Zieve

WHEN RECORDED MAIL TO:

**Law Offices Of Les Zieve**
30 Corporate Park, Suite 450
Irvine, CA 92606

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**PURSUANT TO CIVIL CODE § 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO BELOW IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR.**

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BẢY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

### IMPORTANT NOTICE

## IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY

**COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is ___$34,125.18___ as of ___2/7/2017___, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your Note and Deed of Trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the Note and Deed of Trust or mortgage, the Beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the Beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the Beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made.

EXHIBIT "2"

**NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST**
TS No. **16-43603**

However, you and your Beneficiary or mortgagee may mutually agree in writing prior to the time the Notice of Sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things, (1) Provide additional time in which to cure the default by transfer of the property or otherwise; or (2) Establish a schedule of payments in order to cure your default; or, both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

**To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:**

Bank of America, N.A.
c/o New Penn Financial LLC d/b/a Shellpoint Mortgage Servicing
Phone: 800-365-7107
C/O Law Offices Of Les Zieve
30 Corporate Park, Suite 450
Irvine, CA 92606
Phone: (714) 848-7920

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure. **Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN: That Law Offices of Les Zieve is either the original Trustee, the duly appointed substituted Trustee, or acting as agent for the Trustee or Beneficiary under a Deed of Trust dated 11/8/2007, executed by RODNEY M. VAN PELT, AN UNMARRIED PERSON, as Trustor, to secure certain obligations in favor of BANK OF AMERICA, N.A. as Beneficiary, recorded 12/13/2007, as Instrument No. 20072739514 of Official Records in the Office of the Recorder of Los Angeles County, California describing land therein as: **As more particularly described on said Deed of Trust.**

The subject obligation includes **NOTE(S) FOR THE ORIGINAL** sum of **$400,000.00.** A breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of the following:

**The monthly installment of principal and interest which became due on 10/1/2015, late charges, and all subsequent monthly installments of principal and interest.**

**You are responsible to pay all payments and charges due under the terms and conditions of the loan documents which come due subsequent to the date of this notice, including, but not limited to, foreclosure trustee fees and costs, advances and late charges.**

**Furthermore, as a condition to bring your account in good standing, you must provide the undersigned with written proof that you are not in default on any senior encumbrance and provide proof of insurance.**

# EXHIBIT "2"

NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST
TS No. 16-43603

Nothing in this notice of default should be construed as a waiver of any fees owing to the beneficiary under the deed of trust, pursuant to the terms and provisions of the loan documents.

That by reason thereof, the present Beneficiary under such Deed of Trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

WE ARE ASSISTING THE BENEFICIARY TO COLLECT A DEBT AND ANY INFORMATION WE OBTAIN WILL BE USED FOR THE PURPOSE BY EITHER OURSELVES OR THE BENEFICIARY, WHETHER RECEIVED ORALLY OR IN WRITING. YOU MAY DISPUTE THE DEBT OR A PORTION THEREOF UPON WRITTEN REQUEST WITHIN THIRTY (30) DAYS. THEREAFTER WE WILL OBTAIN AND FORWARD TO YOU WRITTEN VERIFICATION THEREOF. SHOULD YOU NOT DO SO, THE DEBT WILL BE CONSIDERED VALID. IN ADDITION, YOU MAY REQUEST THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR IF DIFFERENT FROM THE CURRENT ONE.

The loan servicer has fulfilled its obligation under either California Civil Code section 2923.5 or 2923.55 (as applicable). Please see Declaration of Compliance attached hereto.

Dated: 2/7/2017                                    Law Offices of Les Zieve, as Trustee

                                                   Michael Busby, Trustee Sale Officer

EXHIBIT "2"

## CALIFORNIA DECLARATION OF COMPLIANCE
(Civil Code § 2923.55(c))

Borrower(s):        RODNEY M. VAN PELT, AN UNMARRIED PERSON
Mortgage Servicer:  New Penn Financial LLC d/b/a Shellpoint Mortgage Servicing
Property Address:   3126 SILVA STREET
                    LAKEWOOD, CA 90712
T.S No:             16-43603

The undersigned, as an authorized agent or employee of the mortgage servicer named below, declares that:

1. ☒ The mortgage servicer has contacted the Borrower pursuant to California Civil Code § 2923.55(b)(2) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure". Thirty (30) days, or more, have passed since the initial contact was made.

2. ☐ The mortgage servicer has exercised due diligence to contact the borrower pursuant to California Civil Code § 2923.55(f) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure". Thirty (30) days, or more, have passed since these due diligence efforts were satisfied.

3. ☐ No contact was required by the mortgage servicer because the individual did not meet the definition of 'borrower" pursuant to California Civil Code subdivision (c) of § 2920.5(c).

4. ☐ The requirements of California Civil Code § 2923.55 do not apply because the loan is not secured by a first lien mortgage or deed of Trust on "owner occupied" residential real property as defined by California Civil Code § 2924.15.

I certify and represent that this mortgage servicer's declaration is accurate, complete and based upon competent and reliable evidence, which the mortgage servicer has reviewed including my review of the mortgage servicer's business records, to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

Date:                           New Penn Financial LLC d/b/a Shellpoint Mortgage
        1/19/2017               Servicing, Mortgage Servicer

                                By:  Alfonso Ramirez - Loss Mitigation Specialist

ATTACHMENT TO NOTICE OF DEFAULT

# EXHIBIT "2"



**This page is part of your document - DO NOT DISCARD**



# 20170584740



**Pages:**
**0003**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**05/26/17 AT 08:00AM**

| | | |
|---|---|---:|
| FEES: | | 28.00 |
| TAXES: | | 0.00 |
| OTHER: | | 0.00 |
| PAID: | | 28.00 |



**L E A D S H E E T**



**201705260170006**

**00013765881**



**008354404**

**SEQ:**
**01**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**

*E400070*

02-16036398

# EXHIBIT "3"

[RECORDING REQUESTED BY]
**Law Offices of Les Zieve**

[WHEN RECORDED MAIL TO:]
**Zieve, Brodnax & Steele, LLP**
**30 Corporate Park, Suite 450**
**Irvine, CA 92606**

---

[SPACE ABOVE THIS LINE FOR RECORDER'S USE ONLY]

## NOTICE OF TRUSTEE'S SALE

**PURSUANT TO CIVIL CODE § 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO BELOW IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR.**

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 11/8/2007.  UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**
A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to a Deed of Trust described below.  The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below.  The amount may be greater on the day of sale.

Trustor: **RODNEY M. VAN PELT, AN UNMARRIED PERSON**
Duly Appointed Trustee: Law Offices of Les Zieve  Deed of Trust recorded 12/13/2007 as Instrument No. 20072739514 in book , page    of Official Records in the office of the Recorder of Los Angeles County, California,
Date of Sale:**6/22/2017** at 11:00 AM
Place of Sale:      By the fountain located at 400 Civic Center Plaza, Pomona, CA 91766
Estimated amount of unpaid balance and other charges: **$421,720.15**

## EXHIBIT "3"

Note: Because the Beneficiary reserves the right to bid less than the total debt owed, it is possible that at the time of the sale the opening bid may be less than the total debt owed.

| | |
|---|---|
| Street Address or other common designation of real property: | **3126 SILVA STREET** **LAKEWOOD, CA 90712** |

Described as follows:
As more fully described on said Deed of Trust

A.P.N #.: **7156-012-035**
The undersigned Trustee disclaims any liability for any incorrectness of the street address or other common designation, if any, shown above. If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale.

NOTICE TO POTENTIAL BIDDERS: If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call (714) 848-9272 or visit this Internet Web site www.elitepostandpub.com, using the file number assigned to this case 16-43603. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

Dated: **5/23/2017**        **Law Offices of Les Zieve, as Trustee**
**30 Corporate Park, Suite 450**
**Irvine, CA 92606**
**For Non-Automated Sale Information, call: (714) 848-7920**
**For Sale Information: (714) 848-9272   www.elitepostandpub.com**

**Ashley Walker, Trustee Sale Assistant**

THIS FIRM IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION WE OBTAINED WILL BE USED FOR THAT PURPOSE

EXHIBIT "3"

** INBOUND NOTIFICATION : FAX RECEIVED SUCCESSFULLY **

Case 2:18-bk-10047-WB    Doc 23    Filed 01/12/18    Entered 01/12/18 16:56:01    Desc
September 18, 2017 at 10:19:31 AM Main Document    Page 32 of 61    Received

09-18-'17 09:19 FROM-                                                      T-095  P001/019 F-525



# NEWPORT LAW FIRM
## LITIGATION & REAL ESTATE ATTORNEYS

5121 Van Nuys Blvd, Suite 203A, Sherman Oaks, CA 91403
Phone Number: 800-805-5817 Facsimile Phone Number: 800-509-5370
Email address: casemanagement@newportlawfirm.com Email address: info@newportlawfirm.com

## FACSIMILE COVER SHEET

**To:**      Shellpoint Mortgage          **Date:**      September 18, 2017
             Law Offices of Les Zieve

**Fax #**    866-467-1184                 **Pages: 19**
             714-848-7650

**From:**    Newport Law Firm

**Subject:**   **Borrower Name: Van Pelt, Rodney**

               **Trustee Sale Number: 16-43603**
               **Property Address: 3126 Silva St, Lakewood, CA 90712**


**Personal and confidential**

As a courtesy, please find enclosed a copy of the drafted complaint. Should the foreclosure sale currently
scheduled for September 20, 2017 not be postponed and/or cancelled, conformed copies of the complaint will
follow. We appreciate your time in this matter.


**Thank you,**
**Newport Law Firm**

Confidentiality Notice: The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended
recipient and may be confidential. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited,
and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message
and all copies from your system. Thank you.

EXHIBIT "4"

**NEWPORT LAW, PC**
Laleh Ensafi, Esq. (SBN 268917)
3991 MacArthur Blvd #400,
Newport Beach, CA 92660
Tel: 888.503.2123    Fax 888.503.3123
Email: ensafilaw@gmail.com

Attorney for Plaintiff Rodney M. Van Pelt

## IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF LOS ANGELES

## NORWALK COURTHOUSE

| | |
|---|---|
| RODNEY M. VAN PELT | CASE No. |
| Plaintiff, | COMPLAINT FOR: |
| v. | 1. VIOLATION OF 15 U.S.C. §1692f(6) |
| SHELLPOINT MORTGAGE SERVICING; AND DOES 1-25, INCLUSIVE | 2. VIOLATION OF CALIFORNIA HOMEOWNER'S BILL OF RIGHTS |
| | 3. VIOLATION OF CIVIL CODE §2923.6. |
| Defendants. | 4. NEGLIGENT REPRESENTATION |
| | 5. VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE §17200, ET SEQ. |

COMES NOW, Plaintiff RODNEY M. VAN PELT, ("Plaintiff" or "PELT"), a

"consumer" as defined by the Fair Debt Collection Practices Act, hereinafter referred to as

FDCPA, *15 U.S.C. § 1692a(3)*, against Defendant SHELLPOINT MORTGAGE SERVICING,

1

COMPLAINT

EXHIBIT "4"

hereinafter referred to as SHELLPOINT, in the capacity as the alleged mortgage loan servicer of the alleged debt and "debt collector" as defined by the FDCPA, *15 U.S.C. §§1692a(6), 1692f(6)*, complains, pleads and alleges as follows:

## I.   STATEMENT OF JURISDICTION

This Court has proper subject matter Jurisdiction over the within action as the real property, the subject of instant action, is so situated and physically located within this California Superior Court's Judicial District.

## II.   SUBJECT REAL PROPERTY AT ISSUE

The Real Property (herein after referred to as "Property"), the subject of any and all claims of any of the Parties hereto, and which is the subject of instant action, and that of which Plaintiff prays for a Decree and/or Order thereto. The "Subject Property" address and legal description is as follows: 3126 Silva Street, Lakewood, CA 90712. More particularly, the legal description of this property is:

LOT 35 OF TRACT 17226, N THE CITY OF LAKEWOOD, COUNTY OF LOS ANGELES, STATE OF CAIFORNIA, AS PER MAP RECORDED IN BOOK 421 PAGES 10 THROUGH 15 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

Assessor's Parcel Number: 7156-012-035.

## III.   IDENTITY OF PARTIES

Plaintiffs are informed and believes, and thereon alleges, that at all times relevant hereto Defendant, SHELLPOINT MORTGAGE SERVICING ("SHELLPOINT"), is a non-registered mortgage institution unlicensed to do business in the State of California, in and of the County and City where subject "PROPERTY" is so situated and physically located which is within this

2

EXHIBIT "4"

1  Courts Judicial District.  SHELLPOINT is in the primary business of servicing residential

2  mortgage loans, collecting debt on behalf of other entities and enforcing security interests.

3
4          Plaintiff is unaware of the true names and capacities of any individuals and/or entities sued

5  herein under the fictitious names DOES 1 to 25, inclusive or, to the extent that the names of such

6  individuals or entities may become known to Plaintiff, and as such Plaintiff cannot state with any

7  certainty that such a Cause of Action lies herein as against such individuals or entities, or

8  Plaintiff is unable to alleged the elements of such Cause of Action, at this time, and as such said

9
10  Defendants are herein named in accordance with the provisions of (*Cal Code of Civil Procedure*

11  *Sec. 474*).  Plaintiff thereon reserves the right to amend instant Complaint to allege the true

12  names and capacities of such fictitiously named Defendants when the same become known or

13  when it has been ascertained with reasonable certainty that such Cause of Action hereunder can

14  be satisfactorily stated and maintained as against each such fictitiously named individual or

15
16  entity.

17          Plaintiff is informed and believes and thereon alleges, that in committing certain acts

18  alleged, some or all of the Defendants named were acting as the Agents, Joint Ventures, Partners,

19  Representatives, Subsidiaries, Affiliates, Associates, Successors, Assigns and/or Employees

20
21  and/or Agents or some or all of the other Defendants, and that some or all of the conduct of such

22  Defendants, as complained of herein, was within the course and scope and agency of such

23  relationship.

24          Wherever reference is made in this Complaint to any act of any Defendants, that allegation

25  shall mean that each Defendants acted individually and jointly with the other Defendants.

26          Any allegation about acts of any corporate or other business Defendants means that the

27  corporation or other business did the acts alleged through its officers, directors, employees,

28

                                        3
                                EXHIBIT "4"
                                   COMPLAINT

1   agents and/or representatives while they were acting within the actual or ostensible scope of their

2   authority.

3          At all relevant times, each Defendant committed the acts, caused or directed to others to

4

5   commit the acts, or permitted others to commit the acts alleged in this Complaint. Additionally,

6   some or all of the Defendants acted as the agent of the other Defendants, and all of the

7   Defendants acted within the scope of their agency if acting as an agent of the other.

8          At all relevant times, Defendants knew or realized that the other Defendants (successors

9

10  and/or assigns) were engaging in or planned to engage in the violations of law alleged in this

11  Complaint. Knowing or realizing that the other Defendants were engaging in or planning to

12  engage in unlawful conduct, each Defendants nevertheless facilitated the commission of those

13  unlawful acts, and thereby aided and abetted the other Defendants in the unlawful conduct.

14        At all times mentioned in this Complaint, Plaintiff, RODNEY M. VAN PELT, is an

15

16  individual consumer residing in the County of Los Angeles and is the owner of the certain

17  Subject Property.

18        This is a federal judicial issue and the Consumer is authorized by the Constitution for the

19  United States of America, codified in the FDCPA, to enforce the laws of the United States and to

20

21  protect and defend those inalienable secured rights within the Constitution for the United States

22  of America. This is an action to enforce the liability of the Debt Collectors/Defendants for

23  violations of this Consumer's protections under the FDCPA, the Constitution for the United

24  States of America, and other consumer protection laws which were enacted by Congress to

25  protect Consumers from illegal, harassing, deceptive and abusive debt collection activities.

26        The rules of law governing this Complaint is the FDCPA, *15 U.S.C. §1692f(6)* the

27

28  Consumer Financial Protection Bureau (CFPB), the Federal Trade Commission (FTC) and

EXHIBIT "4"

1   Article III, Section 2 of the United States Constitution. The language to be used in this matter is

2   the Plaint Writing Act of 2010 – which has been enacted by Congress through Executive Order

3
4   13563. It requires federal agencies to use clear communications that the public can easily

5   understand and written in plain language.

6         Any motions or pleadings, that contain legalese and are not written in plain English for the

7   Consumer to understand, will be intentionally confusing, abusive, profane, obscene and

8
9   harassing to the Consumer, would be a violation of *15 U.S.C. §1692d(2)*, and will be assessed at

10   an additional $5,000.00 per occurrence and added to this Consumer's verified claim.

11         Any response, communications or counterclaim to this Consumer's Complaint verified

12   claim, from any Debt Collector/Defendant in the form of pleadings or otherwise, should be

13   verified, under oath and penalty of perjury, as required by law. There will be no exceptions.

14   Any false statements made in any communications by the Defendants in this enforcement action,

15
16   would be considered perjury. Each occurrence of perjury will be assessed at $25,000.00 and will

17   be added to the Consumers' damages.

18         Any debt collector or attorney attempting to come into this consumer matter, MUST have

19   prior consent from the Consumer or a court of competent jurisdiction to enter their appearance

20
21   and MUST have the proper license; and MUST be properly bonded and insured in an amount to

22   cover all of the Consumers' damages in this action.

23                   **IV.**   **DATE OF DETERMINATION**

24         Plaintiff herein request that the date of the Judicial determination sought be that of the date

25   of the filing of the Complaint.

26
                 **V. STATEMENT OF THE CASE**
27

28         This action arrives out of the illegal conduct and behavior of "debt collector", Defendant,

5

EXHIBIT "4"
COMPLAINT

1  SHELLPOINT, engaging in illegal collection activities as defined in *15 U.S.C. §1692f(6)*.

2      Defendant, due to the failure of the alleged debt being paid, created and filed various

3  foreclosure documents in an attempt to proceed with a non-judicial foreclosure action to

4  dispossess and disable Plaintiff from his personal, private property that was obtained for

5

6  personal, family and household use – not for commercial business or trade.  Plaintiff alleges

7  Defendant SHELLPOINT has no lawful or legal right to do so.

8      Plaintiff, a "consumer", disputes the unverified alleged debt with Defendant and has

9
   requested verification and validation of the alleged debt.  Defendant SHELLPOINT has provided
10
   information to Plaintiff that does not coincide with the recorded documents in his recorded chain
11
12  of title with the Los Angeles County Recorder's Office.  Thus, Plaintiff contends Defendant

13  SHELLPOINT does not have a lawful right to contact him, attempt to collect on the alleged debt,

14
   and proceed with enforcement of a security interest by attempting to conduct a non-judicial
15
   foreclosure action on his Property.
16

17               **VI.   FACTUAL ALLEGATIONS**

18      On or about November 8, 2007, Plaintiff, executed a Deed of Trust in favor of Bank of

19  America, N.A, hereinafter referred to as BOFA.  BOFA is a "creditor" as defined by the FDCPA,

20
   *15 U.S.C. §1692a(4)*.  The transaction as defined by the FDCPA, *15 U.S.C. §1692a(5)* is a
21
22  "debt" and hereinafter referred to as a "debt" or "debt obligation".  Attached as **Exhibit "A"** and

23  incorporated herein by reference is a true and correct copy of the Deed of Trust, hereinafter

24  referred to as DOT.  The loan number referenced on Plaintiff's Deed of Trust is 6363255123.

25      Sometime after the closing of the loan, Plaintiff alleges that the debt was assigned,

26
   transferred, and/or sold to a securitized trust that is undisclosed to Plaintiff.   The entities or
27
28  entity is currently unknown to Plaintiff but will be identified through discovery.

COMPLAINT
EXHIBIT "4"

1      Due to a financial hardship in 2015, Plaintiff fell behind in his payments again. Plaintiff

2  previously fell into default in 2009. In an effort to avoid foreclosure and seek foreclosure

3  alternatives, Plaintiff retained the help of Counsel.

4

5      After researching the chain of title to his Property in the Los Angeles County Recorder's

6  Office, Plaintiff became aware of transactions that were never disclosed to him. Plaintiff soon

7  learned that Defendant named in this lawsuit has no legal or corporate authority to collect on the

8  debt, service the debt, or proceed with a lawful foreclosure.

9

10      In an effort to save his home and avoid a foreclosure, Plaintiff, through his counsel,

11  decided to inquire about the ownership of the debt obligation. Plaintiff, through his counsel, sent

12  Defendant a Qualified Written Request letter, hereinafter referred to as QWR. Defendant

13  SHELLPOINT responded to Plaintiff's requests in a letter dated August 29, 2017. The loan

14  number referenced on the letter is 0570218403. This loan number is different from the loan

15  number originally assigned to the alleged debt and is unfamiliar to Plaintiff.

16

17      Defendant SHELLPOINT, since acquiring the servicing of the alleged debt on or about

18  January 4, 2016, has been harassing Plaintiff by attempting to collect a debt that they do not have

19  a lawful right to do. Upon their acquisition of the alleged debt, the debt was contractually due

20  for the October 1, 2015 payment. Attached as **Exhibit "B"** and incorporated herein by reference

21  is a copy of the Validation of Debt Letter Defendant sent Plaintiff in response to his QWR.

22

23      On August 20, 2017, Plaintiff, through his Counsel, submitted an application for a loan

24  modification agreement. To date, Defendant SHELLPOINT has not completed their evaluation

25  of Plaintiff's loan modification application, however, they continue to schedule foreclosure

26  auction dates on Plaintiff's Property. This is in violation of the California Homeowner's Bill

27  of Rights, otherwise known as and hereinafter referred to as HBOR.

28

7

COMPLAINT
EXHIBIT "4"

1

2          On or about February 7, 2017, Defendant's affiliated agent executed and subsequently

3    recorded a Notice of Default, hereinafter referred to as NOD, on Plaintiff's Property.  The NOD

4    falsely represents that Defendant SHELLPOINT is the authorized agent of the alleged debt and

5    the entity entitled to enforce the alleged debt. The statements contained in the NOD are in

6    violation of the FDCPA because Defendant is attempting to enforce a security interest and take a

7    non-judicial action that is prohibited for them to take, *15 U.S.C. §1692f(6)*.  Attached as **Exhibit**

8    **"C"** and incorporated herein by reference is a true and correct copy of the NOD.

9          On or about May 23, 2017, a Notice of Trustee's Sale, hereinafter referred to as NOS, was

10   executed and subsequently recorded against Plaintiff's Property.  The NOS is in violation of the

11   FDCPA, *15 U.S.C. §1692f(6)* which states that a "debt collector" may not use unfair or

12   unconscionable means to enforce a security and take or threatens to take any non-judicial action

13   to effect dispossession or disablement of property if they are without authority.  Such is the case

14   in the case at bar.

15

16         Here, Plaintiff alleges that Defendant SHELLPOINT is a "debt collector" and has no legal

17   right or authority to enforce a security interest or attempt to collect any payments on Plaintiff's

18   Property.  Attached as **Exhibit "D"** and incorporated herein by reference is a true and correct

19   copy of the NOS.

20            *15 U.S.C. §1692j(a)* states the following:

21

22            It is unlawful to design, compile, and furnish any form knowing that
                 such form would be used to create the false belief in a consumer that
23               a person other than the creditor of such consumer is participating in
                 the collection of or in an attempt to collect a debt such consumer
24               allegedly owes such creditor, when in fact such person is not so
                 participating.
25

26

27                    **VII.    PLAINTIFF HAS A PRIVATE RIGHT TO ACTION**

28

EXHIBIT "4"

As a "consumer" with protections under the FDCPA and the Consumer Financial

Protections Bureau, hereinafter referred to as CFPB, Congress has afforded the Plaintiffs a

"private right of action" for damages caused by the illegal, deceptive and abusive collection

activities of a "debt collector". **A "consumer" has the private right to exercise every**

**provision in the consumer protection laws or any other constitutional protections that have**

**been afforded to him as a "consumer".**

The CFPB affirms that Congress intended the FDCPA to be primarily self-enforcing, and

the "consumer" does not have to ask permission to enforce it. The CFPB's Supplemental

Amicus Brief for *Bock v. Pressler, LLP*, No. 15-1056 stated the following:

> "The Bureau has a substantial interest in plaintiffs' standing under Article III
> to bring in federal court to assert their rights under the Fair Debt Collection
> Practices Act (FDCPA or Act). Although the Bureau and various other federal
> Agencies have authority to enforce the Act, *15 U.S.C. § 1692l*, **Congress**
> **intended the Act to be "primarily self-enforcing," in that "consumers who**
> **have been subjected to collection abuses will be enforcing compliance," S.**
> **Rep. No. 95-382, at 5 (1977). An unduly narrow understanding of Article III**
> **standing would limit consumers' ability to exercise the Act's private right of**
> **action and thereby weaken an important supplement to the Bureau's own**
> **enforcement efforts.** *Emphasis added.*

If Defendant SHELLPOINT, as a "debt collector" feel they have a lawful, bona fide, or

verified claim to Plaintiffs' personal, private Property, then they MUST file a verified

counterclaim pursuant to *15 U.S.C. §1692i*.

### FIRST CAUSE OF ACTION – VIOLATION OF 15 U.S.C. §1692f(6)
[Against Defendant Shellpoint and Doe Defendants]

1. Plaintiff hereby incorporates by reference each and every one of the preceding

paragraphs as if the same were fully set forth herein.

2. Defendant SHELLPOINT is violating *15 U.S.C. §1692f(6)* by perpetrating as

"creditors" and threatening to proceed with a non-judicial foreclosure action on Plaintiff's

9

COMPLAINT
EXHIBIT "4"

Property when they have no present right to possession of the Property claimed as collateral

through an enforceable security interest and there is no present intention to take possession of the

property.

   3. *15 U.S.C. §1692f(6)* regulates more than just the collection of a money debt, it prohibits

a non-judicial action to dispossess Plaintiff from his home without a legal ability to do so.

Plaintiff alleges Defendant is a debt collector attempting to enforce a security interest by using

unfair or unconscionable means to collect or attempt to collect a debt.

   4. In California only a "creditor" may enforce a foreclosure. Defendant is a "debt

collector" as defined by the FDCPA, *15 U.S.C. §§1692f(6), 1692a(6)* and is threatening to take

action by attempting to enforce a security interest by conducting a non-judicial act and

scheduling foreclosure dates on Plaintiff's Property in violation of *15 U.S.C. §1692f(6)*.

   5. Plaintiff alleges the alleged debt was not legally transferred, conveyed, or assigned to

any one before the alleged debt fell into default. Any interest or claim claimed by Defendant's

agent, was acquired after the alleged debt was in default. As defined by the FDCPA, they are a

"debt collector" without authority to enforce a security interest.

   6. The definition of "debt collector" under *15 U.S.C. §1692a(6)* includes Defendant

SHELLPOINT. Defendant does not fall into the exception of *15 U.S.C. §1692a(6)(F)(iii)* which

specifically states for the purpose of *§1692f(6)*: "...such term also includes any person who uses

any instrumentality of interstate commerce or the mails in any business the principal purpose of

which is the enforcement of security interests. The term does NOT include any person collecting

or attempting to collect any debt owed or due or asserted to be owed or due another to the extent

of such action concerns a debt which was not in default at the time it was obtained by such

person.

COMPLAINT
EXHIBIT "4"

1      7. Plaintiff has been damaged by Defendant's wrongful conduct and blatant disregard for

2  the law in an amount to be determined at trial.

3      8. In addition to their liability for actual damages caused to Plaintiff, Defendant is also

4

5  liable for statutory damages pursuant to *15 U.S.C. §1692k*, in an amount to be determined at trial.

6      9. Defendant's conduct as herein alleged continues to be oppressive, fraudulent, and

7  malicious, and therefore Plaintiff is entitled to punitive and exemplary damages in an amount to

8  be proven at trial.

9

10    **SECOND CAUSE OF ACTION – CALIFORNIA HOMEOWNER'S BILL OF RIGHTS ("HBOR")**

11           [Against Defendant Shellpoint and Doe Defendants]

12      10. Plaintiff hereby incorporates by reference each and every one of the preceding

13  paragraphs as if the same were fully set forth herein.

14      11. The California HBOR consists of a series of related bills including two identical bills

15

16  that were passed on July 2, 2012 by the state Senate and Assembly. Both of these bills

17  ultimately give rights back to borrowers and create a system in which banks must be held

18  accountable for pursuing their own interests above the borrowers.

19      12. In light of HBOR, lenders and servicers, such as Defendant SHELLPOINT, are now

20

21  legally obligated to ensure a borrower receives a "meaningful" opportunity to be considered for

22  any of and all options available to avoid foreclosure. It also guarantees struggling homeowners

23  a single point of contact at their lender with knowledge of their loan and direct access to decision

24  makers, and imposes civil penalties on fraudulently signed mortgage documents.

25      13. California *Civil Code §2923.7* provides that upon the request of a foreclosure

26

27  prevention alternative, the mortgage servicer "shall promptly establish a single point of contact

28  and provide the borrower one or more direct means of communication with the single point of

COMPLAINT
EXHIBIT "4"

contact." There is no requirement that the borrower must specifically request that a single point

of contact be assigned.

14. This provision is intended to prevent borrower from being given the runaround, being

told one thing by one bank employee while something entirely different is being pursued by

another.

15. California *Civil Code §2923.7(b)(3)* requires a contact to have access to current

information and be able to timely, adequately, and accurately inform the borrower of the current

status of foreclosure alternative options. Plaintiff alleges that despite his request for assistance

with multiple representatives, Defendant SHELLPOINT has not assigned a single point of

contact.

16. Defendant's failure to provide a single point of contact has caused undue delays in the

processing of Plaintiff's loan modification application which is a material violation of *Section

2923.7.*

### THIRD CAUSE OF ACTION – VIOLATION OF CIVIL CODE §2923.6.
[Against Defendant Shellpoint and Doe Defendants]

17. Plaintiff hereby incorporates by reference each and every one of the preceding

paragraphs as if the same were fully set forth herein.

18. Signed into law on July 11, 2012 and effective January 1, 2013, HBOR, specifically

prohibits the practice commonly known as "Dual Track Foreclosure," whereby lenders and loan

servicers continue to advance the foreclosure process with respect to borrowers whose loans are

simultaneously being reviewed for modification eligibility.

19. California *Civil Code §2923.6* has now been amended to reflect this prohibition.

*Section 2923.6(c)* now reads: "If a borrower submits a complete application for a first lien loan

modification offered by, or through, the borrower's mortgage servicer, a mortgagee, trustee,

12

COMPLAINT

EXHIBIT "4"

beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending." As amended, the California Civil Code also provides borrowers with a post-foreclosure cause of action to recover actual damages or, upon a court's ruling finding of willful, reckless and/or intentional material violation, treble damages or statutory damages of $50,000.00, whichever is greater. California *Civil Code §§2924.12(b), 2924.19(b).*

20. *Civil Code §2923.6(c)(1)* further provides that a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee's sale until the "[m]ortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired." *Subdivision (d) of Section 2923.6* provides 30 days from the date of a written denial for a borrower to appeal the decision denying a loan modification.

21. As such, Defendant SHELLPOINT's actions are in violation of the HBOR's restrictions on dual tracking. SHELLPOINT received a complete first lien loan modification package from Plaintiff on or about August 30, 2017. Defendant SHELLPOINT may NOT conduct a non-judicial foreclosure sale, including scheduling a foreclosure sale date and/or postponing a foreclosure sale date, while a review of the complete loan modification application is pending. Plaintiff's application is still under review and no decision has been rendered. Despite the fact that the modification is still under review, Defendant SHELLPOINT continues to schedule foreclosure dates in violation of the statute. Thus, the foreclosure sale dates scheduled for Plaintiff's Property must be cancelled.

22. The intent of the California legislators in enacting HBOR was to address the consequences of the subprime mortgage crisis leading to declining real property values and

13

EXHIBIT "4"
COMPLAINT

1    historic levels of foreclosure. Given the vast and devastating impact of the crisis, the objective

2    of HBOR was to make sure lenders, loan servicers, and their agents were communicating and

3

4    working with borrowers in default to assess the borrower's financial situation and discuss

5    foreclosure alternatives *before* a foreclosure is started by recording a notice of default. The

6    intent of the legislature is clear and the requirements that it has imposed are by no means

7    arbitrary.

8
     23.  Defendant's failure to comply with *Civil Code §2923.6* directly undermines the intent
9
10   of the statute. This failure to adhere to the statute renders it essentially meaningless and, if the

11   statute is not enforced, it will serve to perpetuate a cycle that results in far too many homeowners

12   being rendered helpless. As a result, Defendant SHELLPOINT is liable to Plaintiff for any and

13   all statutory and/or actual damages which have resulted from their conduct.

14
     24.  As a result of the above described wrongful acts and omissions, Plaintiff has been
15
16   precluded from the rights granted by *Civil Code §2923.6*.

17          **FOURTH CAUSE OF ACTION – NEGLIGENT REPRESENTATION**
                     [Against Defendant Shellpoint and Doe Defendants]
18
19   25.  Plaintiff hereby incorporates by reference each and every one of the preceding

20   paragraphs as if the same were fully set forth herein.

21   26.  Defendant's conduct, as alleged above and beneath, constitutes an intentional

22   misrepresentation. California *Civil Code §1710(2)*, sets forth the cause of action for a negligent
23
24   misrepresentation. The elements for a cause of action for a negligent misrepresentation are (1)

25   defendant makes a representation as to a past or existing material fact, (2) defendant made the

26   misrepresentation without any reasonable grounds for believing it to be true, (3) the

27   representation was made with the intent to induce the plaintiff to rely upon it, (4) plaintiff was

28

14

COMPLAINT
EXHIBIT "4"

unaware of the falsity of the representation and acted in justifiable reliance on the representation,

and (5) damages.

27.  Plaintiff alleges Defendant purposely provided Plaintiff with false information in order

to induce him to pay payments to them in which they have no authority or right to collect and to

proceed with a non-judicial action against Plaintiff's Property.

28.  Furthermore, Plaintiff alleges that Defendant SHELLPOINT claims to be Plaintiff's

mortgage servicer and creditor when they are not.  Plaintiff is of the falsity of the representation

and only discovered its falsity after Defendant instituted foreclosure proceedings against

Plaintiff's Property and inquired about the ownership of his alleged debt.

29.  Plaintiff further seeks restitution, disgorgement of sums wrongfully obtained, costs of

suit, reasonable attorneys' fees, and such other and further relief as the Court may deem just and

proper.

### FIFTH CAUSE OF ACTION -- VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200, ET SEQ.
[Against Defendant Shellpoint and Doe Defendants]

30.  Plaintiff hereby incorporates by reference each and every one of the preceding

paragraphs as if the same were fully set forth herein.

31.  California *Business & Professions Code § 17200, et. seq.*, prohibits acts of unfair

competition, which means and includes any "fraudulent business act or practice…" and conduct

which is "likely to deceive" and is "fraudulent" within the meaning of *Section 17200*.

32.  As more fully described above and below, Defendant, as a "debt collector" are doing

certain acts and practices, such as attempting to collect on a debt to which they have no right or

authority, which are likely to deceive, constituting a fraudulent business act or practice.

33.  Specifically, Defendant engaged in deceptive business practices with respect to

15

COMPLAINT

EXHIBIT "4"

mortgage loan servicing, assignments of notes and deeds of trust, the process of initiating related

matters by:

    a) Assessing improper or excessive fees;
    b) Improperly characterizing customers' accounts as being in default or
       delinquent status to generate unwarranted fees:
    c) Instituting improper or premature foreclosure proceedings to generate
       unwarranted fees;
    d) Failing to provide adequate statement information to customers regarding
       the status of their accounts, payments owed, and/or basis for fees assessed;
    e) Seeking to collect and collecting various improper fees, costs and charges
       that are either not legally due under the mortgage contract or California law,
       or that are in excess of amounts legally due;
    f) Mishandling borrowers' documents resulting in fraudulent defaults and
       foreclosures;
    g) Treating borrower as in default on their loans even though the borrowers
       are under no obligation to make payments to Defendants, or have otherwise
       complied with mortgage requirements or California law.
    h) Failing to disclose the fees, costs and charges allowable under the contract;
    i) Ignoring Borrowers' Qualified Written Request and Borrowers' demand to
       produce the original Promissory Note or comply with Borrowers' request
       for an accounting of all proceeds/payments involved with Borrowers' loan;
    j) Executing, manufacturing, creating and recording false, fraudulent, forged
       and misleading deeds, assignments, notice of sale/default documents; and
    k) Acting as beneficiaries and trustees without the legal authority to do so.

34. Defendant failed to act in good faith as they took and charged fees for services but did

no render them competently and in compliance with applicable law.

35. Moreover, Defendant engaged in a uniform pattern and practice of unfair and over-

aggressive servicing that resulted in the assessment of unwarranted and unfair fees against

California consumers, and premature default resulting in unfair and illegal foreclosure

proceedings. The scheme implemented by Defendant were designed to defraud not just Plaintiff

but all California consumers and enrich the Defendant.

36. The foregoing acts and practices have caused substantial harm to not only Plaintiff but

to all its California consumers and to all California taxpayers.

COMPLAINT

EXHIBIT "4"

# **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff pray for judgment against Defendant, and each of them, jointly and severally, as follows:

1. For compensatory, special, and general damages in an amount according to proof at trial, but not less than $1,500,000.00 against all Defendants;

2. For punitive and exemplary damages in an amount to be determined by the Court against Defendant;

3. For an order compelling Defendant to remove any instrument which does or could be construed as constituting a cloud upon Plaintiff's title to the Property;

4. For a declaratory judgment finding that Defendant does not have any legally cognizable rights as to Plaintiffs, the Property, Plaintiff's alleged debt, tendered to and executed by Plaintiff;

5. For the Court to issue an order restraining Defendant, their agents, or employees from continuing or initiating any action against the Property and enjoining Defendant, their agents, or employees from doing so during the pendency of this matter;

6. For reasonable cost of suit incurred in this action; and

7. For reasonable attorney's fees; and

8. For such additional and further relief as the Court may deem proper and reasonable.

DATED: September 18, 2017

Respectfully submitted by:

**NEWPORT LAW, PC**

_____
Laleh Ensafi
Attorney for Rodney M. Van Pelt

17

COMPLAINT

EXHIBIT "4"

**VERIFICATION**

I, Rodney M. Van Pelt, an individual, am the Plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein stated on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed in Lakewood, California on September 18, 2017

_____
Rodney M. Van Pelt
Plaintiff

18

COMPLAINT

EXHIBIT "4"

# 2:17-bk-21718 | Rodney M Van Pelt

Docket Header Last Updated: 01/05/2018 10:00 am

CLOSED, PlnDue, Repeat-cacb, Incomplete, RepeatPACER, DISMISSED
**U.S. Bankruptcy Court**
**Central District of California (Los Angeles)**
**Bankruptcy Petition #: 2:17-bk-21718-SK**

|  |  |
|---|---|
| | *Date filed:* 09/25/2017 |
| *Assigned to:* Sandra R. Klein | |
| Chapter 13 | *Date terminated:* 11/07/2017 |
| Voluntary | |
| Asset | *Debtor dismissed:* 10/19/2017 |
| *Debtor disposition:* Dismissed for Failure to File | *341 meeting:* 11/03/2017 |
| Information | |

**Debtor**                                    represented by    **Rodney M Van Pelt**
**Rodney M Van Pelt**                                           PRO SE
3126 Silva St
Lakewood, CA 90712
LOS ANGELES-CA
SSN / ITIN: xxx-xx-7990

**Trustee**
**Kathy A Dockery (TR)**
801 Figueroa Street, Suite 1850
Los Angeles, CA 90017
(213) 996-4400

**U.S. Trustee**
**United States Trustee (LA)**
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017
(213) 894-6811

| Date Filed | # | Docket Text |
|---|---|---|
| 09/25/2017 | 1 | Chapter 13 Voluntary Petition Individual . Fee Amount $310 Filed by Rodney M Van Pelt Summary of Assets and Liabilities (Form 106Sum or 206Sum ) due 10/10/2017 . Schedule A/B: Property (Form 106A/B or 206A/B) due 10/10/2017 . Schedule C: The Property You |

## EXHIBIT "5"

| Date Filed | # | Docket Text |
|---|---|---|
| | | Claim as Exempt (Form 106C) due 10/10/2017 . Schedule D: Creditors Who Have Claims Secured by Property (Form 106D or 206D) due 10/10/2017 . Schedule E/F: Creditors Who Have Unsecured Claims (Form 106E/F or 206E/F) due 10/10/2017 . Schedule G: Executory Contracts and Unexpired Leases (Form 106G or 206G) due 10/10/2017 . Schedule H: Your Codebtors (Form 106H or 206H) due 10/10/2017 . Schedule I: Your Income (Form 106I) due 10/10/2017 . Schedule J: Your Expenses (Form 106J) due 10/10/2017 . Declaration About an Individual Debtors Schedules (Form 106Dec) due 10/10/2017 . Statement of Financial Affairs (Form 107 or 207) due 10/10/2017 . Chapter 13 Plan (LBR F3015-1) due by 10/10/2017 . Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period (Form 122C-1) Due: 10/10/2017 . Chapter 13 Calculation of Your Disposable Income (Form 122C-2) Due: 10/10/2017 . Statement of Related Cases (LBR Form F1015-2) due 10/10/2017 . Declaration by Debtors as to Whether Income was Received from an Employer within 60-Days of the Petition Date (LBR Form F1002-1) due by 10/10/2017 . Incomplete Filings due by 10/10/2017 . (Tang, Diana) (Entered: 09/25/2017)                                    Update/Redact |
| 09/25/2017 | 2 | Meeting of Creditors with 341(a) meeting to be held on 11/03/2017 at 09:00 AM at RM 1, 915 Wilshire Blvd., 10th Floor, , Los Angeles, CA 90017. Confirmation hearing to be held on 12/14/2017 at 10:00 AM at Crtrm 1575, 255 E Temple St., Los Angeles, CA 90012. Proof of Claim due by 02/01/2018 . (Tang, Diana) (Entered: 09/25/2017)    Update/Redact |
| 09/25/2017 | 3 | Statement About Your Social Security Number (Official Form 121) Filed by Debtor Rodney M Van Pelt . (Tang, Diana) (Entered: 09/25/2017)                    Update/Redact |
| 09/25/2017 | 4 | Certificate of Credit Counseling Filed by Debtor Rodney M Van Pelt . (Tang, Diana) (Entered: 09/25/2017)                                    Update/Redact |
| 09/25/2017 | | Receipt of Chapter 13 Filing Fee - $310.00 by 01. Receipt Number 20222008. (admin) (Entered: 09/25/2017)                                    Update/Redact |
| 09/26/2017 | | Notice of Debtor's Prior Filings for debtor Rodney M Van Pelt Case Number 14-10004, Chapter 13 filed in California Central Bankruptcy on 01/01/2014 , Dismissed for Other Reason on 05/27/2014.(Admin) (Entered: 09/26/2017)                    Update/Redact |
| 09/26/2017 | 5 | Request for courtesy Notice of Electronic Filing (NEF) Filed by Smith, Valerie. (Smith, Valerie) (Entered: 09/26/2017)                                    Update/Redact |
| 09/27/2017 | 6 | BNC Certificate of Notice (RE: related document(s) 2 Meeting (AutoAssign Chapter 13)) No. of Notices: 5. Notice Date 09/27/2017. (Admin.) (Entered: 09/27/2017)    Update/Redact |
| 09/27/2017 | 7 | |

# EXHIBIT "5"

Case 2:18-bk-10047-WB    Doc 23    Filed 01/12/18    Entered 01/12/18 16:56:01    Desc
Main Document      Page 53 of 61

| Date Filed | # | Docket Text |
|------------|---|-------------|
| | | BNC Certificate of Notice (RE: related document(s) 1 Voluntary Petition (Chapter 13) filed by Debtor Rodney M Van Pelt) No. of Notices: 1. Notice Date 09/27/2017. (Admin.) (Entered: 09/27/2017)                                                    Update/Redact |
| 09/27/2017 | 8 | BNC Certificate of Notice (RE: related document(s) 1 Voluntary Petition (Chapter 13) filed by Debtor Rodney M Van Pelt) No. of Notices: 1. Notice Date 09/27/2017. (Admin.) (Entered: 09/27/2017)                                                    Update/Redact |
| 10/18/2017 | 9 | Notice of Hearing Filed by. (Dockery (TR), Kathy) (Entered: 10/18/2017)    Update/Redact |
| 10/19/2017 | 10 | ORDER and notice of dismissal for failure to file schedules, statements, and/or plan - **Debtor** Dismissed. (BNC) Signed on 10/19/2017 (RE: related document(s) 1 Voluntary Petition (Chapter 13) filed by Debtor Rodney M Van Pelt, 2 Meeting (AutoAssign Chapter 13)). (Milano, Sonny) (Entered: 10/19/2017)                                            Update/Redact |
| 10/21/2017 | 11 | BNC Certificate of Notice (RE: related document(s) 10 ORDER and notice of dismissal for failure to file schedules, statements, and/or plan (Option A or Option B) (BNC)) No. of Notices: 4. Notice Date 10/21/2017. (Admin.) (Entered: 10/21/2017)              Update/Redact |
| 11/03/2017 | 12 | Chapter 13 Trustee's Final Report and Account . (Dockery (TR), Kathy) (Entered: 11/03/2017)                                                          Update/Redact |
| 11/03/2017 | 13 | Proof of service Filed by (RE: related document(s) 12 Chapter 13 Trustee's Final Report and Account (batch)). (Dockery (TR), Kathy) (Entered: 11/03/2017)    Update/Redact |
| 11/07/2017 | 14 | Bankruptcy Case Closed - DISMISSED. An Order dismissing this case was entered and notice was provided to parties in interest. Since it appears that no further matters are required and that this case remain open, or that the jurisdiction of this Court continue, it is ordered that the Trustee is discharged, bond is exonerated, and the case is closed. (RE: related document(s) 2 Meeting (AutoAssign Chapter 13)) (Ly, Lynn) (Entered: 11/07/2017)                                                        Update/Redact |

# EXHIBIT "5"

# 2:17-bk-24442 | Rodney M Van Pelt

Docket Header Last Updated: 12/18/2017 09:18 am

Repeat-cacb, PlnDue, Incomplete, RepeatPACER, DISMISSED

**U.S. Bankruptcy Court**

**Central District of California (Los Angeles)**

**Bankruptcy Petition #: 2:17-bk-24442-VZ**

| | |
|---|---|
| *Assigned to:* Vincent P. Zurzolo | *Date filed:* 11/22/2017 |
| Chapter 13 | *Debtor dismissed:* 12/11/2017 |
| Voluntary | |
| Asset | *341 meeting:* 12/28/2017 |
| *Debtor disposition:* Dismissed for Failure to File | |
| Information | |

**Debtor**                                    represented by   **Rodney M Van Pelt**

**Rodney M Van Pelt**                                         PRO SE

3126 Silva St

Lakewood, CA 90712

LOS ANGELES-CA

SSN / ITIN: xxx-xx-7990


**Trustee**

**Nancy K Curry (TR)**

1000 Wilshire Blvd., Suite 870

Los Angeles, CA 90017

213-689-3014


**U.S. Trustee**

**United States Trustee (LA)**

915 Wilshire Blvd, Suite 1850

Los Angeles, CA 90017

(213) 894-6811


| Date Filed | # | Docket Text |
|---|---|---|
| 11/22/2017 | 1 | Chapter 13 Voluntary Petition Individual . Fee Amount $310 Filed by Rodney M Van Pelt Summary of Assets and Liabilities (Form 106Sum or 206Sum ) due 12/6/2017 . Schedule A/B: Property (Form 106A/B or 206A/B) due 12/6/2017 . Schedule C: The Property You |

# EXHIBIT "6"

| Date Filed | # | Docket Text |
|---|---|---|
|  |  | Claim as Exempt (Form 106C) due 12/6/2017 . Schedule D: Creditors Who Have Claims Secured by Property (Form 106D or 206D) due 12/6/2017 . Schedule E/F: Creditors Who Have Unsecured Claims (Form 106E/F or 206E/F) due 12/6/2017 . Schedule G: Executory Contracts and Unexpired Leases (Form 106G or 206G) due 12/6/2017 . Schedule H: Your Codebtors (Form 106H or 206H) due 12/6/2017 . Schedule I: Your Income (Form 106I) due 12/6/2017 . Schedule J: Your Expenses (Form 106J) due 12/6/2017 . Declaration About an Individual Debtors Schedules (Form 106Dec) due 12/6/2017 . Statement of Financial Affairs (Form 107 or 207) due 12/6/2017 . Chapter 13 Plan (LBR F3015-1) due by 12/6/2017 . Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period (Form 122C-1) Due: 12/6/2017 . Chapter 13 Calculation of Your Disposable Income (Form 122C-2) Due: 12/6/2017 . Cert. of Credit Counseling due by 12/6/2017 . Statement of Related Cases (LBR Form F1015-2) due 12/6/2017 . Declaration by Debtors as to Whether Income was Received from an Employer within 60-Days of the Petition Date (LBR Form F1002-1) due by 12/6/2017 . Incomplete Filings due by 12/6/2017 . (Fierro, Viridiana) (Entered: 11/22/2017)    <span style="color:gray">Update/Redact</span> |
| 11/22/2017 | 2 | Meeting of Creditors with 341(a) meeting to be held on 12/28/2017 at 09:00 AM at RM 1, 915 Wilshire Blvd., 10th Floor, , Los Angeles, CA 90017. Confirmation hearing to be held on 05/13/2019 at 09:00 AM at Crtrm 1368, 255 E Temple St., Los Angeles, CA 90012. Proof of Claim due by 03/28/2018 . (Fierro, Viridiana) (Entered: 11/22/2017)    <span style="color:gray">Update/Redact</span> |
| 11/22/2017 | 3 | Statement About Your Social Security Number (Official Form 121) Filed by Debtor Rodney M Van Pelt . (Fierro, Viridiana) (Entered: 11/22/2017)    <span style="color:gray">Update/Redact</span> |
| 11/22/2017 |  | Receipt of Chapter 13 Filing Fee - $310.00 by 03. Receipt Number 20223517. (admin) (Entered: 11/22/2017)    <span style="color:gray">Update/Redact</span> |
| 11/23/2017 |  | Notice of Debtor's Prior Filings for debtor Rodney M Van Pelt Case Number 17-21718, Chapter 13 filed in California Central Bankruptcy on 09/25/2017 , Dismissed for Failure to File Information on 10/19/2017; Case Number 14-10004, Chapter 13 filed in California Central Bankruptcy on 01/01/2014 , Dismissed for Other Reason on 05/27/2014.(Admin) (Entered: 11/23/2017)    <span style="color:gray">Update/Redact</span> |
| 11/23/2017 | 4 | Request for courtesy Notice of Electronic Filing (NEF) Filed by Smith, Valerie. (Smith, Valerie) (Entered: 11/23/2017)    <span style="color:gray">Update/Redact</span> |
| 11/24/2017 | 5 | BNC Certificate of Notice (RE: related document(s) 2 Meeting (AutoAssign Chapter 13)) No. of Notices: 5. Notice Date 11/24/2017. (Admin.) (Entered: 11/24/2017)    <span style="color:gray">Update/Redact</span> |
| 11/24/2017 | 6 |  |

# EXHIBIT "6"

Case 2:18-bk-10047-WB    Doc 23    Filed 01/12/18    Entered 01/12/18 16:56:01    Desc
Main Document        Page 56 of 61

| Date Filed | # | Docket Text |
|---|---|---|
| | | BNC Certificate of Notice (RE: related document(s) 1 Voluntary Petition (Chapter 13) filed by Debtor Rodney M Van Pelt) No. of Notices: 1. Notice Date 11/24/2017. (Admin.) (Entered: 11/24/2017) *Update/Redact* |
| 11/24/2017 | 7 | BNC Certificate of Notice (RE: related document(s) 1 Voluntary Petition (Chapter 13) filed by Debtor Rodney M Van Pelt) No. of Notices: 1. Notice Date 11/24/2017. (Admin.) (Entered: 11/24/2017) *Update/Redact* |
| 11/30/2017 | 8 | Chapter 13 Trustee's Notice of Requirements *with proof of service*. (Curry (TR), Nancy) (Entered: 11/30/2017) *Update/Redact* |
| 12/05/2017 | 9 | Motion to Extend Deadline to File Schedules or Provide Required Information, and/or Plan (Case Opening Documents) Filed by Debtor Rodney M Van Pelt (Carranza, Shemainee) (Entered: 12/06/2017) *Update/Redact* |
| 12/07/2017 | 10 | Order Denying Motion To Extend Deadline to File Schedules or Provide Required Information, and/or Plan (Case Opening Documents) (BNC-PDF) (Related Doc # 9) Signed on 12/7/2017. (Carranza, Shemainee) (Entered: 12/07/2017) *Update/Redact* |
| 12/07/2017 | 11 | Notice *of Rescheduled §341(a) Meeting of Creditors* Filed by Trustee Nancy K Curry (TR). (Curry (TR), Nancy) (Entered: 12/07/2017) *Update/Redact* |
| 12/09/2017 | 12 | BNC Certificate of Notice - PDF Document. (RE: related document(s) 10 Order on Motion to Extend Deadline to File Schedules and/or Plan (Case Opening Documents - All Chapters) (BNC-PDF)) No. of Notices: 1. Notice Date 12/09/2017. (Admin.) (Entered: 12/09/2017) *Update/Redact* |
| 12/11/2017 | 13 | ORDER and notice of dismissal for failure to file schedules, statements, and/or plan - **Debtor** Dismissed. (BNC) Signed on 12/11/2017 (RE: related document(s) 1 Voluntary Petition (Chapter 13) filed by Debtor Rodney M Van Pelt, 2 Meeting (AutoAssign Chapter 13)). (Ly, Lynn) (Entered: 12/11/2017) *Update/Redact* |
| 12/13/2017 | 14 | BNC Certificate of Notice (RE: related document(s) 13 ORDER and notice of dismissal for failure to file schedules, statements, and/or plan (Option A or Option B) (BNC)) No. of Notices: 4. Notice Date 12/13/2017. (Admin.) (Entered: 12/13/2017) *Update/Redact* |

# EXHIBIT "6"

Fill in this information to identify your case:

| | |
|---|---|
| Debtor 1 | **RODNEY M VAN PELT** |
| Debtor 2<br>(Spouse, if filing) | |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number<br>(If known) | |

Check if this is:

☐ An amended filing

☐ A supplement showing postpetition chapter 13 income as of the following date:

_____
MM / DD/ YYYY

Official Form 106I

## Schedule I: Your Income

12/15

Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

| Part 1: | Describe Employment |
|---|---|

1. **Fill in your employment information.**

   If you have more than one job, attach a separate page with information about additional employers.

   Include part-time, seasonal, or self-employed work.

   Occupation may include student or homemaker, if it applies.

| | | **Debtor 1** | **Debtor 2 or non-filing spouse** |
|---|---|---|---|
| | Employment status | ☐ Employed<br>■ Not employed | ■ Employed<br>☐ Not employed |
| | Occupation | | **MANAGER OF RECYCLING CO** |
| | Employer's name | | **SELF EMPLOYED** |
| | Employer's address | | |
| | How long employed there? | | |

| Part 2: | Give Details About Monthly Income |
|---|---|

**Estimate monthly income as of the date you file this form.** If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

| | | **For Debtor 1** | **For Debtor 2 or non-filing spouse** |
|---|---|---|---|
| 2. | **List monthly gross wages, salary, and commissions** (before all payroll deductions). If not paid monthly, calculate what the monthly wage would be. | 2. $ 0.00 | $ 0.00 |
| 3. | **Estimate and list monthly overtime pay.** | 3. +$ 0.00 | +$ 0.00 |
| 4. | **Calculate gross Income.** Add line 2 + line 3. | 4. $ 0.00 | $ 0.00 |

EXHIBIT "7"

Debtor 1    **RODNEY M VAN PELT**                                            Case number *(if known)*

|  | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| Copy line 4 here | 4. | $ 0.00 | $ 0.00 |

5. **List all payroll deductions:**

| | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| 5a. **Tax, Medicare, and Social Security deductions** | 5a. | $ 0.00 | $ 0.00 |
| 5b. **Mandatory contributions for retirement plans** | 5b. | $ 0.00 | $ 0.00 |
| 5c. **Voluntary contributions for retirement plans** | 5c. | $ 0.00 | $ 0.00 |
| 5d. **Required repayments of retirement fund loans** | 5d. | $ 0.00 | $ 0.00 |
| 5e. **Insurance** | 5e. | $ 0.00 | $ 0.00 |
| 5f. **Domestic support obligations** | 5f. | $ 0.00 | $ 0.00 |
| 5g. **Union dues** | 5g. | $ 0.00 | $ 0.00 |
| 5h. **Other deductions.** Specify: | 5h.+ | $ 0.00 | + $ 0.00 |

6. **Add the payroll deductions.** Add lines 5a+5b+5c+5d+5e+5f+5g+5h.    6. $ 0.00    $ 0.00

7. **Calculate total monthly take-home pay.** Subtract line 6 from line 4.    7. $ 0.00    $ 0.00

8. **List all other income regularly received:**

8a. **Net income from rental property and from operating a business, profession, or farm**
Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income.    8a. $ 0.00    $ 3,948.00

8b. **Interest and dividends**    8b. $ 0.00    $ 0.00

8c. **Family support payments that you, a non-filing spouse, or a dependent regularly receive**
Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement.    8c. $ 0.00    $ 0.00

8d. **Unemployment compensation**    8d. $ 0.00    $ 0.00

8e. **Social Security**    8e. $ 788.80    $ 0.00

8f. **Other government assistance that you regularly receive**
Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies. Specify:    8f. $ 0.00    $ 0.00

8g. **Pension or retirement income**    8g. $ 0.00    $ 0.00

8h. **Other monthly income.** Specify:    **ANNUITY**    8h.+ $ 800.00    + $ 0.00

9. **Add all other income.** Add lines 8a+8b+8c+8d+8e+8f+8g+8h.    9. $ 1,588.80    $ 3,948.00

10. **Calculate monthly income.** Add line 7 + line 9.    10. $ 1,588.80 + $ 3,948.00 = $ 5,536.80
Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse.

11. **State all other regular contributions to the expenses that you list in** *Schedule J.*
Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives.
Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in *Schedule J.*
Specify:    11. +$ 0.00

12. **Add the amount in the last column of line 10 to the amount in line 11.** The result is the combined monthly income.
Write that amount on the *Summary of Schedules* and *Statistical Summary of Certain Liabilities* and Related *Data,* if it applies    12. $ 5,536.80
**Combined monthly income**

13. **Do you expect an increase or decrease within the year after you file this form?**
☒ No.
☐ Yes. Explain:

EXHIBIT "7"

Fill in this information to identify your case:

| | |
|---|---|
| Debtor 1 | **RODNEY M VAN PELT** |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number (If known) | |

Check if this is:

☐ An amended filing
☐ A supplement showing postpetition chapter 13 expenses as of the following date:

_____
MM / DD / YYYY

## Official Form 106J
## Schedule J: Your Expenses
12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1: Describe Your Household

1. **Is this a joint case?**

   ■ No. Go to line 2.
   ☐ Yes. **Does Debtor 2 live in a separate household?**

      ☐ No
      ☐ Yes. Debtor 2 must file Official Form 106J-2, *Expenses for Separate Household* of Debtor 2.

2. **Do you have dependents?** ☐ No

   Do not list Debtor 1 and Debtor 2.    ■ Yes. Fill out this information for each dependent.............

   Do not state the dependents names.

| | Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
|---|---|---|---|
| | SON | 6 | ☐ No  ■ Yes |
| | DAUGHTER | 14 | ☐ No  ■ Yes |
| | | | ☐ No  ☐ Yes |
| | | | ☐ No  ☐ Yes |

3. **Do your expenses include expenses of people other than yourself and your dependents?**

   ■ No
   ☐ Yes

### Part 2: Estimate Your Ongoing Monthly Expenses

Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental *Schedule J*, check the box at the top of the form and fill in the applicable date.

Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on *Schedule I: Your Income* (Official Form 106I.)

| | **Your expenses** |
|---|---|

4. **The rental or home ownership expenses for your residence.** Include first mortgage payments and any rent for the ground or lot.    4. $ _____ **1,604.00**

   **If not included in line 4:**

   4a. Real estate taxes    4a. $ _____ **0.00**
   4b. Property, homeowner's, or renter's insurance    4b. $ _____ **0.00**
   4c. Home maintenance, repair, and upkeep expenses    4c. $ _____ **0.00**
   4d. Homeowner's association or condominium dues    4d. $ _____ **0.00**
5. **Additional mortgage payments for your residence,** such as home equity loans    5. $ _____ **0.00**

## EXHIBIT "8"

Debtor 1    **RODNEY M VAN PELT** _____    Case number (if known) _____

| | | | | |
|---|---|---|---|---|
| 6. | **Utilities:** | | | |
| | 6a.   Electricity, heat, natural gas | 6a. | $ | 0.00 |
| | 6b.   Water, sewer, garbage collection | 6b. | $ | 0.00 |
| | 6c.   Telephone, cell phone, Internet, satellite, and cable services | 6c. | $ | 0.00 |
| | 6d.   Other. Specify: | 6d. | $ | 0.00 |
| 7. | **Food and housekeeping supplies** | 7. | $ | 600.00 |
| 8. | **Childcare and children's education costs** | 8. | $ | 50.00 |
| 9. | **Clothing, laundry, and dry cleaning** | 9. | $ | 200.00 |
| 10. | **Personal care products and services** | 10. | $ | 100.00 |
| 11. | **Medical and dental expenses** | 11. | $ | 300.00 |
| 12. | **Transportation.** Include gas, maintenance, bus or train fare. | | | |
| | Do not include car payments. | 12. | $ | 400.00 |
| 13. | **Entertainment, clubs, recreation, newspapers, magazines, and books** | 13. | $ | 100.00 |
| 14. | **Charitable contributions and religious donations** | 14. | $ | 0.00 |
| 15. | **Insurance.** | | | |
| | Do not include insurance deducted from your pay or included in lines 4 or 20. | | | |
| | 15a.   Life insurance | 15a. | $ | 0.00 |
| | 15b.   Health insurance | 15b. | $ | 0.00 |
| | 15c.   Vehicle insurance | 15c. | $ | 0.00 |
| | 15d.   Other insurance. Specify: | 15d. | $ | 0.00 |
| 16. | **Taxes.** Do not include taxes deducted from your pay or included in lines 4 or 20. | | | |
| | Specify: | 16. | $ | 0.00 |
| 17. | **Installment or lease payments:** | | | |
| | 17a.   Car payments for Vehicle 1 | 17a. | $ | 0.00 |
| | 17b.   Car payments for Vehicle 2 | 17b. | $ | 0.00 |
| | 17c.   Other. Specify: | 17c. | $ | 0.00 |
| | 17d.   Other. Specify: | 17d. | $ | 0.00 |
| 18. | **Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5, _Schedule I, Your Income_ (Official Form 106I).** | 18. | $ | 0.00 |
| 19. | **Other payments you make to support others who do not live with you.** | | | |
| | Specify: | 19. | $ | |
| 20. | **Other real property expenses not included in lines 4 or 5 of this form or on _Schedule I: Your Income._** | | | |
| | 20a.   Mortgages on other property | 20a. | $ | 0.00 |
| | 20b.   Real estate taxes | 20b. | $ | 0.00 |
| | 20c.   Property, homeowner's, or renter's insurance | 20c. | $ | 0.00 |
| | 20d.   Maintenance, repair, and upkeep expenses | 20d. | $ | 0.00 |
| | 20e.   Homeowner's association or condominium dues | 20e. | $ | 0.00 |
| 21. | **Other:** Specify: | 21. | +$ | 0.00 |
| | | | | |
| 22. | **Calculate your monthly expenses** | | | |
| | 22a. Add lines 4 through 21. | | $ | 3,354.00 |
| | 22b. Copy line 22 (monthly expenses for Debtor 2), if any, from Official Form 106J-2 | | $ | |
| | 22c. Add line 22a and 22b.  The result is your monthly expenses. | | $ | 3,354.00 |
| | | | | |
| 23. | **Calculate your monthly net income.** | | | |
| | 23a.   Copy line 12 _(your combined monthly income)_ from Schedule I. | 23a. | $ | 5,536.80 |
| | 23b.   Copy your monthly expenses from line 22c above. | 23b. | -$ | 3,354.00 |
| | 23c.   Subtract your monthly expenses from your monthly income. The result is your _monthly net income._ | 23c. | $ | 2,182.80 |
| | | | | |
| 24. | **Do you expect an increase or decrease in your expenses within the year after you file this form?** | | | |

For example, do you expect to finish paying for your car loan within the year or do you expect your mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

☒ No.

☐ Yes.    ____ Explain here: _____

EXHIBIT "8"

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
30 Corporate Park, Suite 450
Irvine, CA 92606

A true and correct copy of the foregoing document entitled (*specify*): **OPPOSITION TO DEBTOR'S MOTION FOR ORDER IMPOSING A STAY OR CONTINUING THE AUTOMATIC STAY AND DECLARATION IN SUPPORT OF SECURED CREDITOR'S OPPOSITION TO DEBTOR'S MOTION FOR ORDER IMPOSING A STAY OR CONTINUING THE AUTOMATIC STAY** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **January 12, 2018**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

> Laleh Ensafi, Attorney                    lensafi@yahoo.com
> Nancy K Curry (TR), Trustee           ecfnc@trustee13.com
> United States Trustee (LA)              ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **January 12, 2018**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

> DEBTOR                                   PRESIDING JUDGE
> Rodney M Van Pelt                     United States Bankruptcy Court
> 3126 Silva St                             Chambers of Honorable Julia W. Brand
> Lakewood, CA 90712                  255 E. Temple Street, Suite 1382
>                                                   Los Angeles, CA 90012-3332

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 12, 2018 | Michele Dapello | /s/ Michele Dapello |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.